## E. L. Snider, Plaintiff and Appellee, v. W. C. Mullins Construction Company, Defendant, on appeal of Central Trust Company of Illinois, Garnishee, Appellant.

### Gen. No. 31,256.

1. GARNISHMENT—*choses in action in hands of trustee of different capacity as subject to.* Where, by the terms of a trust agreement securing the bonds of a construction company, the company is required to deposit from time to time with the trustee tax bills received by the company for work done by it, when the bills are in proper form and have been approved by the company's banker, tax bills placed by the company in the trustee's hands but not in the required form and not approved by the banker do not come under the trust but are subject to garnishment as property of the company.

2. GARNISHMENT—*municipal tax bills as subject to.*  Tax bills, which are certificates of indebtedness issued by a city for public improvements, are ''choses in action'' subject to garnishment.

3. GARNISHMENT—*when bondholders secured by trust agreement not proper parties to proceeding against trustee.*  Holders of bonds amply secured by tax bills in the hands of a trustee have no claim upon other tax bills which the trustee has refused as not in proper form and for which it has made no claim to the issuing company as replacement of possibly defective tax bills in the manner and time required by the trust agreement, and such bondholders are, therefore, not proper parties to proceedings by a creditor of the *cestui que trust* to garnishee the tax bills in the hands of the trustee.

4. GARNISHMENT—*accrued interest due from garnishee as subject to.*  A trust company is liable as garnishee for a balance of interest it owes the garnishment defendant under its agreement to pay the same on funds deposited with it as collateral for the issuance of bonds and on its failure to show under the agreement by the defendant any default which would entitle it to hold the interest.

Appeal by defendant from the Municipal Court of Chicago; the Hon. PHILIP J. FINNEGAN, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1926. Affirmed. Opinion filed May 17, 1927.

PAM & HURD, for appellant.

STEPHEN A. CROSS, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

On October 9, 1925, in the municipal court of Chicago, plaintiff commenced an action in assumpsit against defendant, a Missouri corporation (hereinafter referred to as the Construction Co.), to recover $9,000, claimed to be due to him for certain commissions. On the same day, in attachment in aid proceedings, the Central Trust Company of Illinois (hereinafter referred to as the Trust Co.) was summoned as garnishee. The Construction Co. did not appear and a judgment by default for $9,000 was rendered against it in plaintiff's favor. Numerous interrogatories, original and additional, as well as answers of the

Trust Co. thereto, were filed, and on the issues framed there was a hearing without a jury, resulting in the court, on February 17, 1926, entering a judgment against the Trust Co. (garnishee) for $493.78, and also adjudging that certain tax bills, amounting to $2,013.76, and received by the Trust Co. from the Construction Co. on October 8, 1925 (the day before the garnishment writ was served) "be turned over and delivered * * * to the bailiff of the Municipal court to be sold for the use of the plaintiff," etc. By this appeal the Trust Co. seeks to reverse the judgment.

From the bill of exceptions it appears that the only evidence heard upon the trial consisted of the several answers of the Trust Co. to the interrogatories and the testimony of G. R. Helffrich, examined by plaintiff's attorney under section 33 of the Municipal Court Act, Cahill's St. ch. 37, ¶ 421. There is no dispute as to the material facts. The Trust Co. is a trustee under a lengthy trust agreement, signed by it and the Construction Co. on December 1, 1924, the purpose of which was to afford security for the latter's bonds to be issued in successive series. A copy of it is attached as an exhibit to the first answer of the Trust Co., filed October 26, 1925. It recites in substance that the Construction Co. proposes to issue its 6 per cent collateral bonds of different series to be secured by the pledge of special tax bills issued by the city of Kansas City, Missouri, in payment for public improvements, and that the Construction Co. intends, from time to time, to pledge such tax bills with the Trust Co. under terms and conditions mentioned in the agreement. In section 5 of article I it is provided that, as security for the payment of *each* series of bonds, the Construction Co. shall from time to time cause to be transferred and deposited with the Trust Co., as trustee, tax bills, "*which shall have been approved in writing by H. M. Cammack of Chicago, Illinois,*" of a

294     Appellate Courts of Illinois.

Snider v. W. C. Mullins Const. Co., 244 Ill. App. 291.

"principal face amount and/or cash equal to not less than 112½ per centum of the total principal amount of the bonds of such *particular* series from time to time outstanding, which special tax bills and/or cash shall be held by the Trustee in trust for the equal security, benefit and protection of the several holders of the bonds of such *particular* series (and not for the holders of the bonds of any other series)   \*   \*   \*." Two series of bonds designated as first and second, had been issued. From the Trust Co.'s second answer, filed December 24, 1925, it appeared that the first series of bonds, dated December 1, 1924, had been issued to the aggregate amount of $150,000; that $37,500 of these bonds had matured and been paid; and that $112,500 worth were still outstanding, for which the Trust Co. held on deposit, as collateral therefor, cash and tax bills amounting to about 112½ per cent of their par value. As to the bonds of the *second* series it appeared that their aggregate amount was $150,000, dated July 1, 1925; that they had all been issued and delivered on July 22, 1925; that none had matured and all were outstanding; and that the Trust Co. held on deposit, as collateral therefor, more than $28,000 in cash and tax bills of an aggregate face value of about $144,000, which security was considerably more than 112½ per cent of the par value of said bonds. It further appeared in substance from said answer that, when the bonds of said *second* series were issued, the Construction Co. did not possess tax bills sufficient in amount to properly secure them; that it deposited with the trustee some tax bills as security, and it was agreed between the two companies that the bonds should nevertheless be issued, that out of the cash proceeds received from their sale a sufficient amount should be retained by the Trust Co. to make up the necessary amount of collateral under the trust agreement until such time as the Construction Co. could deposit other tax bills, and that, upon such tax

bills in proper form being deposited, cash withdrawals in proportionate amounts might from time to time be made by it; that this agreement was acted upon and thereafter from time to time the Construction Co. deposited with the Trust Co. certain tax bills, properly indorsed and approved, and in lieu thereof various amounts of cash in proper proportions were withdrawn by it, and that from the date of the issuance of said bonds and until the filing of said answer, the Construction Co., upon deposit with the Trust Co. of tax bills, had withdrawn from time to time cash to the aggregate amount of about $65,000.

It further appeared that the Construction Co., on October 8, 1925, acting under this special agreement, delivered to the Trust Co. certain tax bills of the aggregate face value of $2,013.76, "accompanied by a request for withdrawal of an equivalent amount in cash" from the funds on deposit as security for the bonds of said *second* series, but that said tax bills *were not approved in writing by H. M. Cammack* and were not otherwise in proper form according to the provisions of the trust agreement and the same were not accepted by the Trust Co. In said second answer of the Trust Co., responding to an appropriate interrogatory, it is stated that, had it not been for the service of the garnishment writ on it on October 9, 1925, cash in the amount of the face value of said tax bills "would have been remitted to the Construction Co., *providing the supporting papers and tax bills were in proper form* and complied in all respects with the requirements of the trust agreement." And G. R. Helffrich, assistant secretary of the Trust Co. and who was in charge for it of all matters in connection with said issues of bonds and said trust agreement, testified: "The Trust Agreement provides that all tax bills that are pledged under the trust must be approved by H. M. Cammack, who was the banker handling the bonds. *This approval had not been given.* If these

296     APPELLATE COURTS OF ILLINOIS.

Snider v. W. C. Mullins Const. Co., 244 Ill. App. 291.

tax bills were not in proper form the bank would not accept them and release the cash. The tax bills would then belong to the Mullins Construction Company, and inasmuch as they were not in proper form *they do belong to the Mullins Construction Company.*" Being asked if the Trust Co. would be willing to turn over the tax bills to the bailiff of the court for sale in partial satisfaction of plaintiff's judgment against the Construction Co., he replied in the negative, giving as a reason for the reply that "the Construction Co. is in default by reason of delinquent tax bills being held in the trust," but he did not state any facts showing wherein the Construction Co. was in default. He further testified that certain tax bills, aggregating approximately $35,000 at their face value, were in default, but he could not say whether any default on any tax bill was occasioned by reason of the fact that the amount due thereon had not been paid, or by reason of the fact that, though paid when due, the proceeds had not been remitted to the Trust Co.; and he did not testify that any of the tax bills, securing the bonds of the *second* series, were in default.

Plaintiff contended at the hearing that, under the undisputed evidence and a proper construction of the trust agreement, the said tax bills, of the aggregate face value of $2,013.76, never became a part of the trust estate in the hands of the Trust Co. for the reason that it had never accepted them, that they remained the property of the Construction Co., and that, hence, they were subject to be taken under the garnishment writ and sold for plaintiff's benefit.

The court's finding, appearing in the draft order of February 17, 1926, is in accord with plaintiff's contention, and is in substance as follows: That, at the time of or after the issuance of the bonds of the *second* series, an agreement was entered into between the Construction Co. and the Trust Co., as trustee, whereby cash deposited with the trustee might be with-

drawn by the former upon its depositing tax bills in proper form with the trustee; that from time to time, after the issuance of said second series of bonds, the Construction Co. deposited additional tax bills with the trustee and received from it cash in exchange therefor; that on October 8, 1925, the trustee received from the Construction Co. certain tax bills, amounting to $2,013.76, which "were not in proper form and did not comply with the requirements of the trust agreement and were, therefore, not accepted" by the Trust Co. under the trust; that the same are now in the possession of the Trust Co. and belong to the Construction Co.; and that plaintiff, E. L. Snider, is entitled to their possession in this proceeding.

It is urged by counsel for the Trust Co. that that portion of the judgment, based upon the above-mentioned finding, wherein it is adjudged that said tax bills in the possession of the Trust Co., aggregating $2,013.76, "be turned over and delivered * * * to the bailiff of the Municipal Court to be sold for the use of the plaintiff," is erroneous and should be reversed. Counsel contend in substance (1) that the tax bills in question were not the proper subject of garnishment in a court of law; (2) that, even though they had not been approved in writing by Cammack and the Trust Co. had rightly refused to accept them and allow the Construction Co. to withdraw their equivalent in cash, still they should properly be considered as a part of the trust estate (not subject to garnishment) as additional security to the bondholders, for the reason that default had been made in the payment of other matured tax bills in the hands of the Trust Co.; and (3) that the bondholders were necessary parties to any adjudication affecting their rights or securities under the trust agreement.

We are of the opinion that all of these contentions are without merit. We think that the tax bills clearly were subject to garnishment, and the judgment as to

them was fully warranted, under the provisions of
section 24 of the Garnishment Act (Cahill's St. 1925,
ch. 62, ¶ 24). It is there provided: "When it shall
appear that any garnishee has in his hands, or under
his control, any goods, chattels, *choses in action* or
effects, belonging to or which he is bound to deliver to
the defendant, with or without condition, the court or
justice of the peace may make any and all proper or-
ders in regard to the delivery thereof to the proper
officer, and the sale or disposition of the same, and the
discharging of any lien thereon, and may authorize the
garnishee to sell any such property, or collect any
choses in action, and account for the proceeds there-
of; * * *." The evidence is undisputed that the
tax bills in question were delivered to the Trust Co.
only on condition that in lieu thereof cash in an equiva-
lent amount would be paid to the Construction Co.;
that the bills had not been approved by Cammack and
otherwise were not in proper form; and that on this
account the Trust Co. refused to accept them under
the trust agreement as a part of the trust estate and
pay the Construction Co. the cash equivalent. Hence,
it sufficiently appears that the bills remained and were
the property of the Construction Co., though in the
possession of the Trust Co., at the time of service of
the garnishment writ. And, clearly, the bills were
"choses in action." In *Easton v. Board of Review of
Peoria County*, 183 Ill. 255, 257, it is said: "An evi-
dence of indebtedness, under whatsoever name it may
be termed, whether note, bond, bill of exchange or other
instrument, and however secured, is a mere chattel
personal, included within the term 'chose in action.' "
And the holders of the bonds of the second series have
no rights in or to the bills in question, entitling them
to be heard. The bills, not having been accepted by
the Trust Co., never became a part of the trust estate.
Furthermore, all bonds of said second series were at
the time amply secured by more than the amount (re-

Snider v. W. C. Mullins Const. Co., 244 Ill. App. 291.

quired by the trust agreement) of cash and other tax bills at face value in the hands of the Trust Co., as trustee. And the fact that there may have been default in the payment at maturity of certain other tax bills, in the hands of the Trust Co. as security for the bonds of said second series (concerning which the evidence is uncertain and unsatisfactory) would not justify the Trust Co., as against an attaching creditor of the Construction Co., in retaining in the trust estate the tax bills in question as additional security for said bonds. In section 8 of article IV of the trust agreement it is provided that ''in the event that at any time there shall be a default in the payment of principal and/or interest of any special tax bill pledged hereunder, *and any such default shall continue for a period of ninety (90) days,* the company will, *upon the written demand of the Trustee,* substitute for the special tax bill in respect of which such default exists other special tax bills not in default of a face amount and/or cash equal to the face amount of the tax bills so in default, accompanying any such *substitute* tax bills by the same certificates and opinions as would be required if such substitute tax bills were being made the basis for the issuance of bonds under this Agreement.'' It does not appear that, because of any claimed default in payment of any tax bills in the possession of the Trust Co. as security for the bonds of said *second* series, the Trust Co. had made any *written demand* on the Construction Co. for any substitutions. Furthermore, under the provisions of said section 8 of article IV, any such claimed default could not have continued for the stipulated period, when the garnishment writ was served on October 9, 1925. The bonds of said series were not issued until July 22, 1925, and none of the tax bills was received by the Trust Co. as security therefor before that date, and, if any default existed as claimed in respect to any tax bill originally deposited as security with the Trust Co., such default

had not continued for the stipulated period of 90 days, when the garnishment writ was served.

Counsel for the Trust Co. further contend that the portion of the judgment in question, wherein the court adjudged that the Trust Co. also was liable as garnishee in the sum of $493.78, is erroneous and should be reversed. This portion of the judgment is based upon the further finding of the court, also contained in said draft order of February 17, 1926, in substance as follows: That, after said trust agreement was executed, the Trust Co. "entered into an arrangement" with the Construction Co., whereby the former agreed to pay to the latter "interest at the rate of 2% per annum on all funds on deposit with it under the trust agreement in excess of $1,000"; that in July, 1925, prior to the institution of the present garnishment suit, the Trust Co. paid to the Construction Co. certain sums on account of interest; that at the times of the service of the writ and the filing of the garnishee's answers there had accumulated in the Trust Co.'s hands interest to the amount of $493.78; and that this interest money belonged to the Construction Co. and is subject to garnishment in this proceeding and plaintiff is entitled thereto. These findings, in our opinion, are amply sustained by the evidence. In the third answer of the Trust Co., filed January 9, 1926, in reply to appropriate interrogatories, it stated that it has a verbal agreement with the Construction Co. "to allow 2% commercial interest to be computed semi-annually on January 1st and July 1st on cash balances on deposit with it as trustee under said trust agreement"; that on July 2, 1925, $613.82 was paid by it to the Construction Co., "covering interest to that date"; that interest has been computed in said trust account from July 1, 1925 to January 1, 1926, amounting to $493.78, which has been entered on the books in said trust account; that said amount of interest, $493.78, "will not be paid to the Construction Co., nor are they

entitled to collect or receive the same, unless and until their default under the terms of the trust agreement which has existed since October 1, 1925, has been terminated''; and that ''this garnishee will hold such interest as a part of the trust property as long as said default exists.'' It thus appeared that, before the garnishee's third answer was filed, there was due to the Construction Co. from the Trust Co. (under a separate verbal agreement to pay semiannual interest on cash balances, which had previously been acted upon) said sum of $493.78, as interest. As no default on the part of the Construction Co., under the terms of the trust agreement, was shown to have existed, we think it clear that this sum as interest could properly be recovered by plaintiff in this garnishment proceeding. In *Ayers v. Metcalf*, 39 Ill. 307, 309, it is said: ''In actions *ex contractu*, the statute has authorized the parties to contract for the payment of interest. And when such a contract has been entered into by parties, like any other lawful agreement, it may be proved by positive or circumstantial evidence. A promise to pay interest may be inferred from the particular mode of dealing between the parties, or from the usages of trade governing the business in which the parties were engaged.'' And, under the facts and circumstances in evidence, we are unable to say that this verbal agreement by the Trust Co. to pay interest to the Construction Co. on said cash balances is not supported by a sufficient consideration, as counsel contend.

Our conclusion is that the judgment appealed from should be affirmed in its entirety, and such will be the order.

*Affirmed.*

FITCH and BARNES, JJ., concur.